IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| GHASSAN ABU HALIMEH, | : | Case No. 1:22-cv-462 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| JUNGLE JIM'S MARKET, INC., | : | |
| | : | |
| Defendant. | : | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 13)

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 13). Plaintiff filed a Response in Opposition (Doc. 22), to which Defendant filed a Reply in Support. (Doc. 24). Thus, this matter is ripe for the Court's review. For the reasons below, Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**.

## FACTS

Defendant Jungle Jim's Market, Inc., is an international market with stores in Fairfield and Eastgate, Ohio. (*See* Dick Dep., Doc. 19, Pg. ID 454; Carroll Dep., Doc. 21, Pg. ID 500.) Plaintiff Ghassan Abu Halimeh—a Jordanian Muslim—worked in the seafood department at Defendant's Fairfield store beginning in June 2020. (*See* Halimeh Dep., Doc. 12, Pg. ID 104; Employee Change Form, Doc. 12-5, Pg. ID 229.) This matter relates to Plaintiff's termination on November 16, 2020. (*See* Compl., Doc. 2.)

I.   **Plaintiff's Background and Application to Work for Defendant**

Plaintiff previously operated a seafood business for fourteen years. (Halimeh Dep., Doc. 12, Pg. ID 101.) Plaintiff often bought his inventory from Ross Carroll, who worked as Defendant's Business Development Manager for its seafood departments. (*Id.*; Carroll Dep., Doc. 21, Pg. ID 499-500.) During this time, Plaintiff and Carroll developed a positive working relationship. (Halimeh Dep., Doc. 12, Pg. ID 101-02; Carroll Dep., Doc. 21, Pg. ID 513.) Plaintiff later closed his business in 2020 because of the COVID-19 pandemic. (Halimeh Dep., Doc. 12, Pg. ID 101.)

After he closed his business, Plaintiff asked Carroll whether Defendant's seafood department was hiring. (Halimeh Dep., Doc. 12, Pg. ID 101-02.) Carroll then arranged for Plaintiff to interview for a position in the seafood department, and Plaintiff filled out an application to work for Defendant. (*See* Application, Doc. 12-2, Pg. ID 185; Carroll Dep., Doc. 21, Pg. ID 513-14.) Around the time that Plaintiff applied to work for Defendant, its seafood department had an opening for an assistant manager. (Carroll Dep., Doc. 21, Pg. ID 515-16.) So, Plaintiff applied to be a "Seafood Manager" for Defendant. (Application, Doc. 12-2, Pg. ID 185.)

Defendant ultimately hired Plaintiff as a "seafood clerk" instead of a manager. (Carroll Dep., Doc. 21, Pg. ID 514-15.) Defendant did so because a seafood clerk is the starting position for all new employees in its seafood department. (*Id.*) A seafood clerk is tasked with "unloading trucks, rotating fish, shoveling ice, merchandising, helping customers, cutting fish, going to [the] freezer and stocking frozen goods as well as many other things." (*Id.* at Pg. ID 510.) Seafood clerks are also responsible for serving as

2

"seafood specialists" for customers. (*Id.* at Pg. ID 510-11.)

## II. Plaintiff's Employment

After Plaintiff began working for Defendant, Carroll became "really disappointed" in Plaintiff's job performance. (Carroll Dep., Doc. 21, Pg. ID 517.) Plaintiff's skillset was not as developed as Carroll had expected for someone who previously worked in the seafood business. (*Id.*) Carroll was also "very disappointed in [Plaintiff's] customer service [skills]." (*Id.*) According to Carroll, Plaintiff would stand in front of the counter and talk to certain customers for "20 to 25 minutes." (*Id.*) This led to long lines, poor customer experiences, and added pressure on an already short-staffed department. (*Id.*)

Carroll testified that Plaintiff also argued with a customer over how to cut fish. (Carroll Dep., Doc. 21, Pg. ID 517-19.) During the interaction, Plaintiff swore at the customer and came around the counter to confront the customer. (*Id.* at Pg. ID 518.) Ultimately, Plaintiff and the customer had to be physically separated. (*Id.*) Carroll also testified that customers complained about their interactions with Plaintiff on other occasions. (*Id.* at Pg. ID 520-21.) Carroll discussed these issues with management and adjusted Plaintiff's assignments to mitigate customer interaction. (*Id.* at Pg. ID 521.) For example, Carroll took Plaintiff off the "whole fish table," where employees cut whole fish to customers' specifications. (*Id.* at Pg. ID 522.) Plaintiff denies ever having a confrontation with a customer. (Halimeh Dep., Doc. 12, Pg. ID 106.)

### a. Carroll's Behavior Towards Plaintiff

Plaintiff testified that Carroll was a "tough manager." (Halimeh Dep., Doc. 12, Pg.

3

ID 105.) On one particular occasion, Plaintiff was speaking with a customer when Carroll confronted Plaintiff, telling him that "we're not here to socialize. We're here to sell fish." (*Id.*) In another instance, Plaintiff testified that Carroll swore at him after he suggested a new method to show products in the seafood department's display case. (*Id.*) Another time, Plaintiff asked for help in caring for the lobster tank. (*Id.* at Pg. ID 105-06.) In response, Carroll said that he did not have the time to help. (*Id.*)

Plaintiff testified that, at some point, Carroll asked Plaintiff if he was Muslim and what country he was from. (Halimeh Dep., Doc. 12, Pg. ID 106.) Carroll also asked Plaintiff why Muslims faced Mecca when they prayed and why Muslim men could have multiple wives. (*Id.* at Pg. ID 107.) Carroll testified that he never asked such questions. (Carroll Dep., Doc. 21, Pg. ID 528-29.) Plaintiff maintains that seafood clerk Tim O'Shea and another employee also asked Plaintiff where he was from. (Halimeh Dep., Doc. 12, Pg. ID 106.)

### b. Tim O'Shea's Promotion as Assistant Manager

As noted above, when Plaintiff was hired, the seafood department had an opening for an assistant manager. (Carroll Dep., Doc. 21, Pg. ID 515-16.) Carroll ultimately selected O'Shea for the position based on his experience and professional skills. (*Id.* at Pg. ID 524; O'Shea Dep., Doc. 17, Pg. ID 317.) O'Shea had been working for Defendant since late 2018 and had "eight to ten years" of experience working in managerial roles. (*Id.* at Pg. ID 312, 322.) And, Carroll testified that O'Shea understood the business, worked well with customers, had good merchandising skills, and possessed good leadership qualities. (Carroll Dep., Doc. 21, Pg. ID 524.) Carroll considered Plaintiff for the role, but ultimately

4

concluded that O'Shea was the better option for the position. (*Id.* at Pg. ID 525-26.) Carroll made his decision, in part, "after seeing [Plaintiff's] work performances and customer altercations." (*Id.* at Pg. ID 527.) Defendant promoted O'Shea as assistant manager in August 2020. (O'Shea Dep., Doc. 17, Pg. ID 317.)

The day O'Shea was promoted, O'Shea maintains that Plaintiff asked him if there was an issue between Plaintiff and Carroll, noting that Carroll had distanced himself from Plaintiff. (O'Shea Dep., Doc. 17, Pg. ID 362-63.) Plaintiff specifically asked if Carroll did so because of his looks, if he smelled or dressed funny, or because of his religion. (*Id.* at Pg. ID 362-64.) O'Shea responded that he did not think that was the case but told Plaintiff to report the matter to Human Resources ("HR") if he did not feel comfortable. (*Id.* at Pg. ID 364.) Plaintiff did not file a complaint with HR. (Halimeh Dep., Doc. 12, Pg. ID 109-11.)

### III. Plaintiff Suffers a Stroke

On September 12, 2020, Plaintiff suffered a stroke. (Halimeh Dep., Doc. 12, Pg. ID 112.) Two days later, O'Shea texted Plaintiff asking if he was coming into work. (9/14/2020 Correspondence, Doc. 12-7, Pg. ID 238.) Plaintiff's wife Yasmin responded from Plaintiff's phone and informed O'Shea that Plaintiff was in the hospital. (*Id.*) O'Shea expressed concern and asked to be kept posted on Plaintiff's condition. (*Id.*) Yasmin advised O'Shea that she informed "management" about the matter and further shared that Plaintiff might be unable to work that week. (*Id.* at Pg. ID 239.)

O'Shea texted Plaintiff again on September 14 and then on September 16, 2020, to check on Plaintiff's status. (9/14/2020 and 9/16/2020 Correspondence, Doc. 12-7, Pg. ID

5

239.) Yasmin responded for Plaintiff, informing O'Shea that Plaintiff could not speak and would be in the hospital for some time. (9/16/2020 Correspondence, Doc. 12-7, Pg. ID 239-40; *see also* Halimeh Dep., Doc. 12, Pg. ID 113.) Yasmin added that Plaintiff would "not be able to work for the next couple of weeks." (9/16/2020 Correspondence, Doc. 12-7, Pg. ID 240.) In response, O'Shea asked Yasmin to send him a doctor's note addressing Plaintiff's condition. (*Id.* at Pg. ID 241.)

On September 21, 2020, Yasmin provided O'Shea with an update. (9/21/2020 Correspondence, Doc. 12-7, Pg. ID 242.) Yasmin told O'Shea that Plaintiff was "in bad shape" and would need physiotherapy for 2 weeks. (*Id.*) In response, O'Shea requested a doctor's note addressing Plaintiff's timeline to return to work. (*Id.*) The next day, Yasmin requested information about short-term disability. (9/22/2020 Correspondence, Doc. 12-7, Pg. ID 242.) From September 23 to October 4, 2020, Yasmin and O'Shea discussed Plaintiff's entitlement to FMLA and its application process. (*See* 9/23/2020 through 10/4/2020 Correspondence, Doc. 12-7, Pg. ID 243-246.) Plaintiff was not ultimately eligible for FMLA leave or short-term disability due to his limited time working for Defendant. (*See* Dick Dep., Doc. 19, Pg. ID 435; O'Shea Dep., Doc. 17, Pg. ID 344-45.)

On October 16, 2020, Plaintiff's doctor informed him that he would be cleared to work on November 16, 2020. (Medical Records, Doc. 12-6, Pg. ID 232.) Plaintiff testified that he called Store Manager Kathy Dick to inform her of this fact sometime in October. (Halimeh Dep., Doc. 12, Pg. ID 122.) Dick disputes that this conversation ever occurred. (Dick Dep., Doc. 19, Pg. ID 435.) Carroll also testified that he did not hear from Plaintiff at all during this time, stating that he had about "30 missed and unreturned phone calls

6

from [Plaintiff]." (Carroll Dep., Doc. 21, Pg. ID 541.)

### IV. Plaintiff's Termination

After a few weeks, HR spoke with Carroll and told him to "figure out what [he was] doing with [Plaintiff]." (Carroll Dep., Doc. 21, Pg. ID 537.) So, Carroll scheduled Plaintiff to work a "workweek" of shifts in November 2020. (*Id.* at Pg. ID 537-39.) Plaintiff did not come to work for those shifts or otherwise contact Carroll about his absence. (*Id.* at Pg. ID 539.) So, Carroll informed HR that Plaintiff had "voluntarily quit." (*Id.* at Pg. ID 540.) Carroll also noted that Plaintiff was "non-rehireable" based on Plaintiff's previous job performance issues. (*Id.*)

Defendant officially terminated Plaintiff on November 16, 2020. (Employee Change Form, Doc. 12-5, Pg ID 229.) The termination form noted that Plaintiff "was unable to come to work per medical reasons. Months have passed with zero contact." (*Id.*) The form also identified Plaintiff as not "Re-employable." (*See* Employee Change Form, Doc. 12-5, Pg ID 229.) Dick, who signed off on the termination, noted that Plaintiff was identified as not "Re-employable" based on his lack of contact and not "want[ing] his job." (Dick Dep., Doc. 19, Pg. ID 438-39, 452-53.)

## PROCEDURAL POSTURE

On June 27, 2022, Plaintiff sued Defendant in the Butler County Court of Common Pleas for (1) unlawful termination based on disability, race/national origin, and religious discrimination under Ohio and federal law; (2) failure to promote based on race, national origin, and religious discrimination under Ohio and federal law; and (3) unlawful retaliation under federal and Ohio law related to his termination. (*See* State Compl., Doc.

7

1-1, Pg. ID 10-23; Compl., Doc. 2, ¶¶ 69-291.) Defendant removed the matter to this Court. (*See* Notice of Removal, Doc. 1.) Then, on January 19, 2024, Defendant moved for summary judgment on Plaintiff's claims. (Motion, Doc. 13.)

## LAW

When there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, the district court shall grant summary judgment. Fed. R. Civ. P. 56(a). The moving party has the burden to establish that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). If the moving party meets that burden, then it becomes the nonmoving party's responsibility to point to specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A court need not search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). And, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). Rather, to preclude summary judgment, the nonmoving party must put forward probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy*, 39 F.3d at 1347. If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

## ANALYSIS

As noted above, Plaintiff brings claims for racial, national origin, and religious

8

discrimination under Title VII and Ohio law for Defendant's failure to promote him and his termination. (Compl., Doc. 2, ¶¶ 103-284.) Plaintiff also brings claims for disability discrimination in violation of the Americans with Disabilities Act ("ADA") and Ohio law, and for retaliation under Ohio law, Title VII, and the ADA related to Defendant's termination of Plaintiff. (*Id.* at ¶¶ 69-102, 285-91).

Both Title VII and Ohio law prohibit employers from discriminating against their employees because of race, national origin, or religion. *See* 42 U.S.C. § 2000e-2(a)(1); Ohio Rev. Code § 4112.02(A). Likewise, the ADA and Ohio law prohibit employers from discriminating against their employees because of disability. *See* 42 U.S.C. § 12112(a); Ohio Rev. Code § 4112.02(A). Lastly, Title VII, the ADA, and Ohio law prohibit employers from retaliating against their employees for engaging in protected conduct. *See* 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a); Ohio Rev. Code § 4112.02(I). The Court may review all these claims under the same framework. *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021) (ADA, Title VII, and Ohio discrimination); *E.E.O.C. v. SunDance Rehab. Corp.*, 466 F.3d 490, 501 (6th Cir. 2006) (Title VII and ADA retaliation); *Allman v. Walmart, Inc.*, 967 F.3d 566, 571 (6th Cir. 2020) (Ohio retaliation).

Where, as here, a plaintiff seeks to establish discrimination through indirect, rather than direct, evidence, the Court applies the *McDonnell Douglas* burden-shifting framework. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). The first step requires a plaintiff to establish a prima facie case for discrimination. *Id.* at 363. To do so, a plaintiff must show that he was: (1) a member of a protected class, (2) qualified for the position, (3) the victim of an adverse employment action, and (4) replaced by someone

9

outside the protected class. *Marie v. Am. Red Cross*, 771 F.3d 344, 359 (6th Cir. 2014). And, a prima facie case of retaliation requires a showing that (1) the plaintiff engaged in protected activity; (2) the defendant knew of this protected activity; (3) the defendant then took an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *See SunDance Rehab. Corp.*, 466 F.3d at 501 (Title VII and ADA retaliation); *Allman*, 967 F.3d at 571 (Ohio retaliation).

Once the plaintiff establishes his prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). If the defendant meets its burden, the burden shifts back to the plaintiff to demonstrate that the defendant's reason was but a pretext for unlawful discrimination. *Id.*

The Court assumes that Plaintiff has proven his prima facie cases related to Defendant's failure to promote and his termination. Defendant too satisfies its burden of showing that it acted for legitimate, nondiscriminatory reasons. Defendant promoted O'Shea over Plaintiff because of O'Shea's history with the company, as well as his work performance—unlike Plaintiff's limited experience working for Defendant and negative customer interactions. (Motion, Doc. 13, Pg. ID 284-85.) These are legitimate, nondiscriminatory reasons to promote O'Shea over Plaintiff. *See Bolls v. South-W. Thomson Learning*, 311 F. Supp. 2d 643, 652 (S.D. Ohio 2003) (longer tenure); *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (performance record). Likewise, Defendant had a legitimate, nondiscriminatory reason to terminate Plaintiff: his failure to communicate with Defendant's management. (*See* Motion, Doc. 13, Pg. ID 286); *Brown v.*

10

*Ohio State Univ.*, 616 F. Supp. 2d 740, 751 (S.D. Ohio 2009) (finding "poor communication" to be a "legitimate non-discriminatory reason[] for an employee's demotion or termination") Thus, the burden shifts to Plaintiff to show pretext.

The fundamental question in the pretext analysis is: did the employer make the adverse employment decision for the stated reason or not? *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012). A plaintiff must produce sufficient evidence such that a reasonable jury could doubt the employer's stated reason for its actions. *McCart v. Univ. of Cincinnati Found.*, No. 1:08-CV-656, 2010 U.S. Dist. LEXIS 34406, at *7 (S.D. Ohio Apr. 7, 2010). A plaintiff may refute an employer's proffered legitimate reason by showing that the reason (1) has no basis in fact, (2) did not actually motivate the challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).

As noted above, Plaintiff brings claims for racial, national origin, and religious discrimination under Title VII and Ohio law for Defendant's failure to promote him and his termination. (Compl., Doc. 2, ¶¶ 103-284.) Plaintiff also brings claims for disability discrimination in violation of the ADA and Ohio law, and for retaliation under Ohio law, Title VII, and the ADA related to his termination. (*Id.* at ¶¶ 69-102, 285-91). The Court first considers pretext related to Plaintiff's claims based on his termination.

I. **Termination Claims**

   a. **Race/National Origin, Religion, and Retaliation Claims**

Plaintiff relies on the second method of proving pretext for his race/national origin, religion, and retaliation claims related to termination, arguing that Defendant's

11

proffered reason for termination did not actually motivate the challenged conduct. (Response, Doc. 22, Pg. ID 598-600.) Plaintiff disputes that he was not in contact with Defendant for months and argues that Defendant changed its rationale for termination when it refused to rehire him due to his performance. (*See id.*) On review, the Court finds that the disputed facts relating to Plaintiff's contacts with Defendant preclude summary judgment on these claims.

Plaintiff has shown a genuine issue of material fact over whether Defendant's proffered reason for terminating Plaintiff actually motivated Defendant. Defendant's stated reason for terminating Plaintiff was that Plaintiff "was unable to come to work per medical reasons. Months have passed with zero contact." (Employee Change Form, Doc. 12-5, Pg ID 229.) To be sure, throughout its motion, Defendant solely relies on Plaintiff's alleged lack of communication as the basis for its decision to terminate Plaintiff. (Motion, Doc. 13, Pg. ID 284-87.) In support of this reasoning, Defendant points to testimony of Dick and Carroll, who both maintain that they received no communication from Plaintiff after he experienced his stroke. (*See id.*; Carroll Dep., Doc. 21, Pg. ID 541; Dick Dep., Doc. 19, Pg. ID 435.) But, from September 14 to October 4, 2020, Plaintiff's wife was in regular contact with O'Shea about Plaintiff's status and ability to return to work. (*See* Correspondence, Doc. 12-7). If the communication had stopped there, then Defendant's proffered reason—a lack of contact for "months"—may have merit. However, the parties dispute whether Plaintiff continued communicating with Defendant after October 4, 2020.

Plaintiff maintains that he contacted Dick in October to inform her that his doctor

12

approved of him returning to work. (Halimeh Dep., Doc. 12, Pg. ID 122.) Dick disputes that this conversation occurred. (Dick Dep., Doc. 19, Pg. ID 435.) Plaintiff's doctor informed Plaintiff of his ability to return to work on October 16, 2020. (Medical Records, Doc. 12-6, Pg. ID 232.) So, if Plaintiff's version of events were determined to be true, his conversation with Dick would have occurred on October 16, 2020, or later. This finding would directly contradict Defendant's justification for termination—that Plaintiff was unresponsive for "months." (Employee Change Form, Doc. 12-5, Pg. ID 229.) As a result, there is a genuine dispute of material fact over whether Defendant's proffered reason for terminating Plaintiff actually motivated Defendant. *See Mace v. Smith*, No. 3:17-CV-283, 2018 WL 6728569, at *5 (W.D. Ky. Dec. 21, 2018) ("The dispute . . . boils down to a 'he said/she said' argument, which is the epitome of a genuine issue of material fact.").

Nevertheless, Defendant argues that the "same actor inference" prevents a finding of pretext. (*See* Motion, Doc. 13, Pg. ID 287.) Under the same actor inference, "the fact that the same person or group of people did both the hiring and firing over a short time frame is strong evidence that there was no discrimination involved in the later termination." *Wofford v. Middletown Tube Works, Inc.*, 67 F. App'x 312, 318 (6th Cir. 2003) (citation omitted). But, the Sixth Circuit has explained that such an inference is permissible but not mandatory, and that it may be weakened by other evidence. *Wexler*, 317 F.3d at 572-74. Ultimately, the inference cannot compel summary judgment for a defendant if the plaintiff has "otherwise raised a genuine issue of fact" as to discrimination. *Id.* at 573-74. As discussed, Plaintiff has raised a genuine dispute of material fact as to pretext for these claims. Thus, the same actor inference does not compel summary judgment in this case.

*See id.*

As there is a genuine issue of material fact as to whether Defendant's proffered reason for termination was pretextual, summary judgment is not appropriate on Plaintiff's race/national origin, religion, and retaliation claims related to his termination.

### b. Disability

Next, the Court considers Plaintiff's disability discrimination claims related to his termination under state and federal law. (*See* Compl., Doc. 4, ¶¶ 69-102.) Plaintiff does not present arguments regarding pretext for these claims, instead centering his response around whether he has stated a prima facie case. (*See* Response, Doc. 22, Pg. ID 590-93.) Usually, summary judgment is appropriate when a plaintiff does not analyze—or present evidence of—pretext to support a disability discrimination claim. *See Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 569 (6th Cir. 2023). While Plaintiff does not analyze whether pretext exists for his disability discrimination claims, he has nevertheless shown a genuine dispute of material fact regarding pretext related to Plaintiff's termination. As shown above, a dispute of material facts exists regarding Defendant's proffered reason for terminating Plaintiff. As such, summary judgment on these claims is not appropriate.

### II. Failure to Promote Claims

Finally, the Court considers pretext in relation to Plaintiff's failure to promote claims. Plaintiff provides no argument to demonstrate pretext as to these claims. (*See* Response, Doc. 22, Pg. ID 593, 600.) Instead, Plaintiff solely argues that he has stated a prima facie case. (*Id.*) Unlike Plaintiff's discrimination claims related to his termination, Plaintiff has not presented evidence to demonstrate pretext related to his failure to

promote claims. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1314 (6th Cir. 1989) (holding that summary judgment was proper "[s]ince [the plaintiff] has failed to set forth any evidence to rebut [the defendant's] legitimate and nondiscriminatory reason for his demotion").

Defendant promoted O'Shea over Plaintiff based on O'Shea's experience and professional skills. (Carroll Dep., Doc. 21, Pg. ID 524.) Although Plaintiff had many years of experience in the fish industry (Halimeh Dep., Doc. 12, Pg. ID 101), O'Shea had many years of experience working in management and directly with Defendant. (O'Shea Dep., Doc. 17, Pg. ID 312, 322.) O'Shea also possessed extensive professional skills that made him suitable for the assistant manager role. (Carroll Dep., Doc. 21, Pg. ID 524-27.) This contrasts with Plaintiff, who appeared to struggle working with customers. (*See, e.g., id.* at Pg. ID 517-22.) Without more, Plaintiff has not shown pretext for his failure to promote claims brought under state and federal law. *See, e.g., Provenzano*, 663 F.3d at 817 (finding that the plaintiff had not raised a genuine dispute despite "superior educational credentials" when the promoted individual "had a much stronger performance record").

\*   \*   \*

Plaintiff has shown that a dispute of material fact exists regarding whether Defendant's proffered reason for terminating Plaintiff was pretextual. So, summary judgment on Plaintiff's claims related to his termination is not appropriate. But, Plaintiff has not shown a dispute of material fact or pretext generally related to Plaintiff's failure to promote claims. As such, summary judgment on Plaintiff's claims related to Defendant's failure to promote Plaintiff is appropriate.

## CONCLUSION

Based on the foregoing, the Court **ORDERS** the following:

1. Defendant's Motion for Summary Judgment (Doc. 13) is **GRANTED IN PART AND DENIED IN PART**;

2. Summary Judgment is **ENTERED** in favor of Defendant on Plaintiff's claims for failure to promote based on race, national origin, and religious discrimination under Ohio and federal law; and

3. Plaintiff's claims for unlawful termination based on disability, race/national origin, and religious discrimination under Ohio and federal law, as well as his claims for unlawful retaliation under Ohio and federal law, **SHALL PROCEED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF OHIO

By: _____  
JUDGE MATTHEW W. McFARLAND